UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| The Democratic Party of Georgia<br><br>        Plaintiff,<br><br>   v.<br><br>Constance Burkes, Ernest Davis Jr., Benny G. Hand, Charles W. Lamb, Jr., Annabelle T. Stubbs, & Frederick Williams, in their official capacity as Superintendent of Elections of Dougherty County<br><br>        Defendants. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br><br><br>No. 1:18-cv-212 |

      Not all violations of the United States Constitution are intentional (or even voluntary), but all are insidious. During October, a confluence of extraordinary circumstances—first a judicial injunction, then a state holiday, then a natural disaster—prevented Dougherty County from coming even close to meeting its statutory deadline for providing absentee ballots to electors. The result has been both a violation of Georgia law and an undue burden on the rights of county electors, some of whom, through no fault of their own, will not have their absentee ballots counted, because their completed ballots arrived back at the county after the close of polls on Election Day. A simple solution to this deprivation of rights exists: this Court can issue an injunction authorizing and instructing the Defendants to treat such ballots similarly to those sent from electors overseas, counting them if they were postmarked by election day and received by the county within three days following the election. Such relief is necessary to protect the right to vote in Georgia.

## NATURE OF THE ACTION

1. The Democratic Party of Georgia files this action under 42 U.S.C. § 1983 to secure equitable relief for the unlawful deprivation of their constituents' and members' constitutional rights, privileges, and immunities guaranteed by the Fourteenth Amendment to the United States Constitution, the First Amendment to the United States Constitution, and the laws of the United States, and to redress harm to its organizational interests.

2. "No right is more precious in a free country than that of having a voice in the election of those who make the laws . . . Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). Plaintiff bring this lawsuit to protect that right and to prevent disenfranchisement of Dougherty County voters who have been denied the right to vote through Defendants' implementation of Georgia's election code.

## PARTIES

**PLAINTIFF**

3. The Democratic Party of Georgia ("DPG") is a state committee, as defined by 52 U.S.C. § 30101(15), and the official Democratic Party organization of the state of Georgia. It represents a diverse group of stakeholders, including elected officials, candidate for elected office, state committee members, advisory caucuses, affiliate groups, grassroots activists, and, of course, active voters. DPG works to increase turnout to elect Democratic candidates at both the state and Federal level, and assists Georgians to ensure that all eligible voters have access to the franchise.

4. The DPG has direct organizational standing to bring a claim for a violation of the Georgia election code and the Federal Constitution, for multiple reasons:

5. First, Dougherty's violation of the election code in a manner that decreases turnout is directly contrary to DPG's organizational mission, which includes both increasing voter turnout in elections and helping to elect Democratic candidates to office at both the state and Federal level. In particular, the DPG devoted extraordinary resources during the 2018 election cycle to encouraging all voters, and particularly first-time voters, to consider voting by absentee ballot and other forms of advance voting. The invalidation of absentee ballots frustrates that organizational mission, not to mention results in fewer votes for Democratic candidates.

6. Second, the rejection of absentee ballots and Dougherty's failure to comply with state law both has already and will in the future cause a diversion of DPG's resources. The DPG spent substantial time and energy in advance of the election attempting to cure the problems with Dougherty County's absentee ballot program. For example, DuBose Porter, the Chairman of the Democratic Party of Georgia, was personally involved in an effort to encourage the Governor of Georgia to provide emergency relief to voters in Dougherty County. DPG expects to continue to devote organizational resources to the problem in the future. DPG is receiving calls into its Voter Protection Hotline from aggrieved voters in Dougherty County requesting assistance. Handling those calls diverts employees and volunteers away from assisting other voters in the state of Georgia, many of whom are presently calling in on other pressing matters.

7. The DPG also has representational standing based on injuries to its members. DPG's members include both current elected officials and current candidate for office, including candidates who appeared on the ballot in Dougherty County. Those candidates are injured if fewer absentee ballots are counted. DPG's membership also includes the affected electorate itself, who have unquestionably been injured either by having their ballots outright rejected, by

having an undue burden placed on their voting rights, and by having to go through additional rounds of process to make their voices heard.

8. Defendants Constance Burkes, Ernest Davis, Jr., Benny G. Hand, Charles W. Lamb, Jr., Annabelle T. Stubbs, and Frederick Williams ("Defendants") are each members of the Dougherty County Board of Registrations and Elections, and collectively serve as the Superintendent of Elections.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), (4), 1357, 1367, and 42 U.S.C. §§ 1983 and 1988.

10. This Court has personal jurisdiction over Defendants, all of whom are sued in their official capacities and are appointed officials in the State of Georgia. All Defendants work or reside in Georgia.

11. Venue in this district is proper under 28 U.S.C. § 1391(b)(1) and (2) because Defendants work and reside in this district and a substantial part of the events and omissions giving rise to these claims occurred in this district.

## FACTUAL ALLEGATIONS

### GEORGIA'S ABSENTEE BALLOT SCHEME

12. Georgia permits "no excuse" absentee balloting, meaning that any registered Georgia voter can vote absentee by mail without being required to provide a reason for voting by absentee ballot. O.C.G.A. § 21-2-380(b); *Spalding Cty. Bd. Of Elections v. McCord*, 287 Ga. 835, 840 (2010). To ensure that voters have adequate time to exercise their right to vote by absentee ballot, the Board of Registrars ("Board") or Absentee Ballot Clerk ("Clerk") for a

County "**shall** mail or issue official absentee ballots to all eligible applicants not more than 49 days but not less than 45 days prior to any . . . general election other than a municipal general election." O.C.G.A. § 21-2-384 (emphasis added).

13. Generally, an absentee ballot must be returned to the Board or Clerk prior to the closing of the polls on the date of the election. When an absentee ballot is received after the closing of the polls, the Board or Clerk "shall promptly notify the elector by first-class mail that the elector's ballot was returned too late to be counted and that the elector will not receive credit for voting in the primary election." O.C.G.A. § 21-2-386(a)(F).

14. However, not all absentee ballots must be received prior to the closing of the polls. Overseas and military ballots "that are postmarked by the date of such primary, election, or runoff and are received within the three-day period following such primary, election, or runoff, if proper in all other respects, shall be valid ballots and shall be counted and included in the certified election results." O.C.G.A. § 21-2-386(a)(G).

**THE INJUNCTION**

15. According to the plain language of O.C.G.A. § 21-2-384, the Dougherty Defendants should have issued official absentee ballots to all eligible applicants during the latter portion of September, 2018. This deadline was disrupted, however, when a county resident seeking to be listed as a candidate on the ballot sought and obtained an injunction, issued September 20, 2018, prohibiting the Board from issuing any absentee ballots for the November 6, 2018 election.

16. The injunction was not lifted until approximately Friday, October 5, 2018, after the statutory deadline for Dougherty to mail absentee ballots, and after approximately 1000 applications for absentee ballots had accumulated at the Board. The following weekday,

Monday, October 8, was Columbus Day.

**THE HURRICANE**

17.     By the following day, October 9, 2018, the county had begun preparing to be struck by Hurricane Michael, a catastrophic hurricane with sustained winds of 145 miles per hour. Hurricane Michael caused considerable damage to the county, resulting in the Governor of Georgia declaring a state of emergency and the Federal Emergency Management Agency designating the area eligible for individual and public disaster assistance.

18.     The Board offices were closed for three days during and following Hurricane Michael. Even after the office reopened, upon information and belief, the Board worked with intermittent electrical power and telephone systems.

**BALLOTS FINALLY ISSUE, BUT ARRIVE AND RETURN SLOWLY**

19.     Upon information and belief, the Board staff put considerable effort in the aftermath of Hurricane Michael into issuing absentee ballots, including working on evenings and weekends, but they were simply too far behind. The Board was continuing to mail absentee ballots until at least as late as October 29, 2018, just days from the election and more than a month behind the September deadline fixed by statute.

20.     Mail is not delivered quickly in Dougherty County. In 2012, the United States Postal Service closed the mail distribution center in Albany as a cost-savings measure and routed all mail through a distribution center in Tallahassee, Florida. It typically took 3-4 days from when the county listed an absentee ballot as sent for it to reach the voter, and then took multiple days to be returned. The result is that the process of casting a ballot by mail is doubly slow, losing days on both the delivery and the return trip.

**THE SUBSTANTIAL CUMULATIVE BURDEN ON VOTING**

21.     The result of this confluence of factors—an injunction, a state holiday, a powerful hurricane, and slow mail—is that Dougherty County electors who sought to vote by absentee ballot were significantly burdened or outright denied the franchise. Voters should have received their ballots in September, but some or many of them did not receive them until the end of October or the beginning of November, just days before they were due to be **received** back at the Board (and with an intervening weekend in between).[1]

22.     Although voters who request an absentee ballot sometimes still have the option of voting in person, that process is not always practical or even possible, such as where the voter has work or childcare obligations, is disabled, or is not physically present in Dougherty County on the day of the election. Georgia voters rely on their right to receive absentee ballots 45 days in advance to plan their schedules and ensure that they will be able to cast a timely ballot. In addition, voters who have requested an absentee ballot but attempt to vote in person are subject to an additional layer of administrative hurdles, such as the requirement that they appear in person before and submit a written cancellation request to the Registrar or Clerk. *See* O.C.G.A. § 21-2-388(2). In addition, a voter who is unaware of the mail transit speed in Albany may mistakenly believe that a ballot postmarked shortly before the election would arrive at the Board or Clerk in time, when it may not.

23.     In any event, Federal Courts have consistently held that "[w]hile it is true that absentee voting is a privilege and a convenience to voters, this does not grant the state the latitude to deprive citizens of due process with respect to the exercise of this privilege." *Raetzel*

---

[1] A search of "Post Offices™ and Approved Postal Providers" at usps.com indicates that no post office locations are open in Albany on Sundays and only one is open for a portion of Saturday.

*v. Parks/Bellemont Absentee Election Bd.*, 762 F. Supp. 1354, 1358 (D. Ariz. 1990); *see also Zessar v. Helander*, No. 05 C 1917, 2006 WL 642646, at *6 (N.D. Ill. 2006) ("approved absentee voters are entitled to due process protection."). In fact, Judge May of the Northern District of Georgia reached a similar conclusion in the immediate lead-up to this election. *See* Case No. 1:18-cv-04776-LMM, Document 23, P. 22. (N.D. Ga. Oct. 24, 2018).

## COUNT I:

### Violation of Georgia Election Code

24. By issuing ballots in October, the County Defendants violated O.C.G.A. § 21-2-384(a)(2), which required them to issue ballots in September 2018. The purpose of this requirement is to ensure that electors have the right to review, complete, and return their ballots.

25. Georgia law provides any Court with jurisdiction over a dispute the power to frame an appropriate remedy. O.C.G.A. § 9-2-3.

## COUNT II:

### Undue Burden on the Right to Vote in Violation of the First and Fourteenth Amendments

26. Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though fully set forth herein.

27. Under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment, a state classification is subject to strict scrutiny when it "burdens the exercise of a fundamental right guaranteed by the U.S. Constitution," including the "fundamental rights to free speech and to vote." *Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1210-11 (10th Cir. 2002). Moreover, any state election regulation that imposes non-discriminatory restrictions on

the right to vote must be justified by an important regulatory interest. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). "However slight th[e] burden may appear … it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008) (Stevens, J., plurality opinion) (internal quotation marks omitted). This inquiry requires a court to "weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justification for the burdens imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789).

28. As set forth above, enforcing the requirement that ballots be received prior to the close of polls where a county has failed in its obligation to mail absentee ballots sufficiently in advance of an election would impose significant burdens on the fundamental right to vote. Indeed, the decision by the General Assembly of Georgia to dictate by statute that ballots be delivered sufficiently in advance of the election demonstrates that Georgia considers voters to have a compelling interest in having adequate time to review, complete, and return their ballots. And it certainly cannot be contended that where a voter receives a ballot too late to return it in time to vote, that the voter has experienced a burden: that voter has been entirely denied the franchise.

29. At the same time, there is no regulatory interest in enforcing O.C.G.A. § 21-2-386(a)(F) under the circumstances presented here. Certainly Defendants can assert no compelling interest in being permitted to violate O.C.G.A. § 21-2-384 without remedy. Although Defendants

may assert a governmental interest in convenience, finality, or simplicity in rejecting absentee ballots not received before the close of polls, this interest in minimal, because the state already permits *some* absentee ballots to be postmarked the day of the election and received up to three days later, namely overseas and military voters. Defendants already have processes in place to count such votes, and cannot complete their canvas prior to doing so. In addition, Dougherty County does not need to certify its results until Tuesday, November 13, after the three-day period envisioned for military and overseas voters. Although, upon information and belief, the Secretary of State's office has informed the press of its intent to certify the state-wide results on November 14, 2018, it is under no obligation to do so until Monday, November 20. The result is that providing the relief requested in this complaint will engender no delays in certifying the result and not require the Defendants to develop any additional processes. Thus, the state has no interest of sufficient importance to outweigh the undue burden application of O.C.G.A. § 21-2-386(a)(F) would place on eligible voters.

## COUNT III:

### Arbitrary and Disparate Treatment in Violation of the Fourteenth Amendment

30.     Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though fully set forth herein.

31.     Under the Equal Protection Clause of the Fourteenth Amendment, "citizens enjoy 'a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction.'" *Citizen Center v. Gessler*, 770 F.3d 900, 918 (10th Cir. 2014) (quoting *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972)). Thus, "state actions in election processes must not result

in 'arbitrary and disparate treatment'" of voters. *Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 234 (6th Cir. 2011) (quoting *Bush v. Gore*, 531 U.S. 98, 105 (2000)).

32. As set forth above, enforcing O.C.G.A. § 21-2-386(a)(F), the requirement that ballots be received prior to the close of polls, while providing no remedy for the government's own violation of O.C.G.A. § 21-2-384 that ballots be sent sufficiently far in advance, results in arbitrary and disparate treatment of absentee voters in Dougherty County, who have received several weeks less time to return their ballots than voters in other counties, and in some cases have received so little time that voting absentee was *de facto* impossible, despite that Georgia provides for "no excuse" absentee voting. Such arbitrary and disparate treatment of the right to vote is inconsistent with the Fourteenth Amendment.

## COUNT IV:

### Denial of Procedural Due Process in Violation of the Fourteenth Amendment

33. Plaintiffs re-allege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though fully set forth herein.

34. A claim for procedural due process lies when there is "(1) a constitutionally protected liberty or property interest and (2) a governmental failure to provide an appropriate level of process." *Citizen Center*, 770 F.3d at 916. Plaintiffs and their constituents possess a constitutionally protected right to vote, and the process by which Defendant County has implemented the absentee ballot program has or will result in some ballots being rejected through no fault of the elector and without providing the elector any form of process to remedy that rejection.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment and relief as follows:

A. An order and judgment instructing Defendants that all absentee ballots received by Dougherty County that are postmarked by November 6, 2018, and are received within the three-day period following the election, if proper in all other respects, shall be valid ballots and shall be counted and included in the certified election results.

B. Such other and further relief as this Court may deem just and proper.

Dated: November 8, 2018

    Respectfully submitted,

    /s/ Kurt G. Kastorf
    Kurt G. Kastorf
    Georgia Bar No. 315315
    The Summerville Firm
    1226 Ponce de Leon Ave NE
    Atlanta, GA 30306
    (770) 635-0030
    kurt@summervillefirm.com

    Allegra J. Lawrence
    Georgia Bar No. 439797
    Lawrence & Bundy LLC
    1180 West Peachtree Street, Suite 1650
    Atlanta, Georgia 30309
    Telephone:404-400-3350
    Facsimile:404-609-2504
    Allegra.Lawrence-Hardy@lawrencebundy.com

    Dara Lindenbaum (*Pro hac vice pending*)
    Sandler Reiff Lamb Rosenstein & Birkenstock P.C.
    1090 Vermont Avenue NW, Suite 750
    Washington, D.C. 20005
    (202)734-6139
    Lindenbaum@sandlerreiff.com